UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| CASEY BROCK PATRICK,<br>not in his individual capacity<br>but as the Independent Executor<br>of the will and estate of NORMA<br>B. PATRICK, deceased,<br><br>        Plaintiff,<br><br>V.<br><br>PAUL K. CROLEY,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 12-61-GFVT<br><br><br>**MEMORANDUM OPINION<br>&<br>ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

        Plaintiff, Casey Brock Patrick, claims that Defendant is liable for negligently preparing a

defective affidavit of descent and defective deed.  [R. 1 at 9].  For the reasons set forth below,

the Court now holds that the motion for summary judgment regarding liability [R. 53] shall be

GRANTED.  The Court declines to rule on the motions for summary judgment on grounds of

damages [R. 54] or statute of limitations and/or the laches doctrine [R. 55] as they are moot.[1]

**I**

        This dispute arises out of a real estate transaction in 2000 involving a property located at

403 Pine Street, Williamsburg, KY.  [R. 53-2 at 2].  Norma Patrick, now deceased, was the buyer

---

[1] The Motion for Summary Judgment regarding statute of limitations, in essence, raises a
jurisdictional issue.  It is possible that at a later stage in this litigation it would be clear that summary
judgment is appropriate with regard to the statute of limitations.  However, at this stage in the litigation,
drawing facts in the light most favorable to the non-movant, summary judgment is not appropriate on that
issue.

of the Pine Street property.  [*Id.*].  Patrick's interest is now represented by the Plaintiff, Casey
Brock Patrick, not in his individual capacity but as the Independent Executor of the will and
estate of Norma Patrick.  [R. 56 at 1].  Defendant, Paul Croley, was retained by a seller, Lola
Douglas in this transaction to represent her interests as well as the other seller, Joie Bryant.  [R.
53-2 at 2].  Croley was retained to prepare an affidavit of descent for Ms. Douglas' sister, Eliza
Tolliver, and to draft a deed concerning the anticipated conveyance of the property for $35,000.
[R. 53-2 at 2].  Croley drafted the documents and expressly disclaimed "[t]his instrument prepared
without title examination" on the face of the deed.  [*Id.*].

On January 6, 2000, Bryant signed the deed and on January 10, 2001 Douglas signed the
deed and served as affiant for the affidavit of descent.  [*Id.*].  Attorney William Cox[2] prepared a
Memorandum of Abstract in preparation for the transaction.  [R. 53-2 at 2-3].  A title opinion,
dated January 22, 2001 approved the title for purposes of Plaintiff's loan with Community Trust
Bank.  [R. 53-2 at 3; R. 53-5].  On February 1, 2001, Norma Patrick executed a warranty deed
for the Pine Street property and signed a mortgage for said property which also had been
prepared by Attorney William Cox.  [R.53-2; R. 53-6].

Ten years later, on June 28, 2011, Ms. Patrick entered into a real estate contract to sell the
Pine Street property to Marie Cornelius for $80,000.  [R. 21 at 8, Exhibit E].  After entering into
this sales contract, a title examination was conducted where it was discovered that issues existed
with the property's title.  [R. 53-2 at 4].  Ms. Patrick alleges that a defective affidavit and deed
had been prepared by Mr. Croley.  [R. 21 at 8].  Marie Cornelius cancelled the land contract on
the basis of this title opinion.  This dispute specifically revolves around the allegedly defective

---

[2]William Cox was Plaintiff's attorney [R. 53-2 at 3 *citing* R. 52, Dep Page 23] and Plaintiff's boyfriend [R.
53-2 at 3 *citing* R. 51, Dep. Page 11].  William Cox died in 2005.  [R.53-2 at FN 4].

*affidavit of descent* that Croley prepared on behalf of the original sellers.

Plaintiff alleges that Defendant is liable pursuant to Section 413.245, *Actions for professional service malpractice,* of the Kentucky Revised Statutes.  Now pending before the Court are three summary judgment motions filed by the Plaintiff contesting liability, damages and, finally, the statute of limitations and laches doctrines.

## II

## A

When sitting in diversity, a federal court applies the substantive law of the state in which it sits.  *Hayes v. Equitable Energy Resourcs Co*., 266 F.3d 560, 566 (6th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941)).  However, when considering the issue of summary judgment, a federal court applies the standards of Fed.R.Civ.P. 56 rather than "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr. Inc*., 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co*. 997 F.2d 150, 165 (6th Cir. 1993). Under Rule 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56.  A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  The burden is initially on the moving party to inform "the district court of the basis of its motion, and identifying those portions of 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,'
which it believes demonstrates the absence of a genuine issue of a material fact." *Celotex Corp.
v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may make this showing by
demonstrating the absence of evidence to support one of the essential elements of the nonmoving
party's claim.  *Id*. at 322-25.  Once this burden is met, the nonmoving party, "must set forth
specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56.  Further, "the trial
court no longer has a duty to search the entire record to establish that it is bereft of a genuine
issue of material fact."  *Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479-80 (6th Cir. 1989).
Instead, "the non-moving party has an affirmative duty to direct the Court's attention to those
specific portions of the record upon which it seeks to rely to create a genuine issue of material
fact."  *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

**B**

Mr. Croley argues in his Reply to Plaintiff's Response to Defendant's Motions for
Summary Judgment [R. 57] that the Plaintiff's Response to his Motion for Summary Judgment
[R. 53] is inadequate.  [R. 57].  As stated in the above procedural explanation of the Summary
Judgment standard:

> the nonmoving party, "must set forth specific facts showing that there is a genuine
> issue for trial."  Fed.R.Civ.P. 56.  Further, "the trial court no longer has a duty to
> search the entire record to establish that it is bereft of a genuine issue of material
> fact."  *Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479-80 (6th Cir. 1989).
> Instead, "the non-moving party has an affirmative duty to direct the Court's
> attention to those specific portions of the record upon which it seeks to rely to
> create a genuine issue of material fact."  *In re Morris*, 260 F.3d 654, 665 (6th Cir.
> 2001).

In this case, Patrick's total response [R. 56] to Croley's three Motions for Summary Judgment
[R. 53, 54, 55] was 14 pages long.  As Croley points out, the first seven of these 14 pages were

nearly word for word recitations of Patrick's Complaint and Amended Complaint. [3] [R. 57, 56, 12, 21]. Patrick responds to the arguments presented in Defendant's Motion for Summary Judgment on Liability grounds [R. 53] with only one, ten line, paragraph. [R. 56 at 9, Para. 16]. While length of response is certainly not determinative of its quality, Patrick does have a duty to put forth specific facts showing that genuine issues exist for trial. Fed.R.Civ.P. 56.

In the one paragraph addressing the liability issue [R. 56 at 9, Para. 16] Patrick cites only two cases in support of his position. The rule explicated in these two citations was preemptively addressed by Croley in his Motion for Summary Judgment on the issue of Liability [R. 53]. The remaining five lines of the response in this paragraph are argument not supported by evidence in the record.

The Court need not rule on the sufficiency of this response as it is a matter of law that controls here. As explained next, Croley owed no duty to Patrick and, thus, cannot be liable for legal negligence.

## C

In Kentucky, the Plaintiff has the burden of proving the following elements in a legal malpractice claim:

> 1) that there was an employment relationship with the defendant/attorney; 2) that the attorney neglected his duty to exercise the ordinary care of a reasonably competent attorney acting in the same or similar circumstances; and (3) that the attorney's negligence was the proximate cause of damage to the client.

*Osborne v. Keeney*, 399 S.W.3d 1, 9-10 (Ky. 2012) (citing *Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003) (citing *Stephens v. Denison*, 64 S.W.3d 297, 298-99 (Ky. Ct. App. 2001))). KRS 413.245, *Actions for Professional Services*, provides that:

---

[3] The Court does note that a 12 line portion of the Response on page five did not appear in the

a civil action, whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render, professional services for others shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured. Time shall not commence against a party under legal disability until removal of the disability.

Ky. Rev. Stat. Ann. § 413.245 (West).

Croley's first argument is that since "no attorney-client relationship existed," he did not owe Plaintiff a duty of care regarding the drafting of the affidavit of descent of Eliza Tolliver. [R. 53-2 at 6]. As explained in *Osborne v. Keeney*, the first element that must be established in proving legal negligence in Kentucky is "that there was an employment relationship with the defendant/attorney." 399 S.W.3d 1, 9-10 (Ky. 2012) (citing *Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003) (citing *Stephens v. Denison*, 64 S.W.3d 297, 298-99 (Ky. Ct. App. 2001))). This is the starting point of the Court's analysis.

The Plaintiff's answer to interrogatories in this matter makes it clear that a traditional attorney-client relationship did not exist.

> INTERROGATORY NO. 4: Please identify in detail the exact scope of the representation for which you allegedly retained the Defendant Paul Croley and identify all sums of money you paid to the Defendant Paul Croley for such representation.
>
> ANSWER: The said Norma Brock Patrick did not "retain" the defendant regarding her acquisition of the subject property. The defendant did not "represent" said decedent and she did not pay him any compensation for his involvement.
>
> …
>
> INTERROGATORY NO. 6: Please identify each and every communication you had with Paul Croley, or any agent, servant or employee of Paul Croley, with respect to the underlying matter, giving, as nearly as possible, the date of the communication and the substance thereof.

original Complaint or Amended Complaint.

<u>ANSWER</u>: When the plaintiff's decedent discovered the title defect arising from the defendant's negligence, she instructed her attorney Ralph W. Hoskins in Corbin, Kentucky to communicate with the defendant and her attorney sent a letter dated August 1, 2011 to the defendant. The defendant responded to the attorney's letter by telephone and denied liability. This litigation followed.

<u>INTERROGATORY NO. 7</u>: Please identify each and every personal meeting you had with Paul Croley concerning the underlying legal matter, and for each said meeting please state where said meeting occurred, identify the persons present, the reason for said meeting and identify the communications which occurred at said meeting.

<u>ANSWER</u>: Not applicable.

[R. 53-8 at 3-4, 8-9]. From looking at the Response to the interrogatory it is clear that no traditional attorney-client relationship existed between the parties. When Ms. Patrick discovered the title defect she contacted her attorney Ralph W. Hoskins of Corbin. [*Id.*] This lack of an attorney- client relationship is conceded by the Ms. Patrick in the Answer to Interrogatory 4 when Patrick stated, "[t]he defendant did not "represent" said decedent." [*Id.*] Finding that a traditional attorney-client relationship did not exist, the Court now turns to examine whether the defendant owed Plaintiff a duty despite her non-client status.

In some situations attorneys may owe a duty to non-client, third parties. In the early Kentucky Court of Appeals decision *Rose v. Davis*, the Court stated that:

An attorney is not ordinarily liable to third persons for his acts committed in representing a client. It is only where his acts are fraudulent or tortious and result in injury to third persons that he is liable. To hold an attorney responsible for the damages occasioned by an erroneous judicial order, even though the error be induced by him, would make the practice of law one of such financial hazard that few men would care to incur the risk of its practice.

288 Ky. 674 (Ky. App. 1941) (overruled on other grounds by *Penrod v. Penrod*, 489 S.W. 2d 524). This general approach to third party liability has persisted throughout the decades.

In *Hill v. Wilmott*, the Court concluded that "[a]n attorney may be liable for damage caused by his negligence to a person intended to be benefited by his performance irrespective of any lack of privity." 561 S.W.2d 331 (Ky. App. 1978) (adopting the approach of *Donald v. Garry,* 19 Cal.App.3d 769, 97 Cal. Rptr. 191 (1971)). The Court in *Hill v. Wilmott* declined to find that such a duty existed, as Plaintiff was not an intended beneficiary of the Defendant's services. 561 S.W.2d 331 at 335 (Ky. App. 1978). *Hill* is a malicious prosecution case which is not the same as a legal negligence case but many of the Court's considerations are equally relevant. The Court recognizes that "[t]here are several public policy reasons to limit the adverse party's action to one for malicious prosecution." *Id.* at 334. They recognize that "[t]he key to the protection of the basic legal concept allowing free access to the courts is the element of "probably cause" in an action for malicious prosecution." *Id.* at 335. They continue, "[a]ny less demanding standard would make the attorney '…an insurer to his client's adversary that his client will win in litigation.'" *Id.* at 335 (citing *Tool Research & Engineering Corp. v. Henigson*, 46 Cal.App.3d 675, 120 Cal. Rptr. 291 (1975). The *Hill* Court concludes their analysis; "[t]o allow a party to bring a negligence action against the adverse attorney would have a chilling effect on the number of meritorious claims filed and this cannot be tolerated under our system." 561 S.W.2d 331 at 335 (Ky. App. 1978).

In *Hill,* the Court of Appeals adopted an approach taken by a California appellate court in *Donald v. Garry*, 19 Cal.App.3d 769 (1971). In that case, the negligent attorney worked for a collection agency and was tasked with collecting a debt for a client of the collection agency. *Donald v. Garry*, 19 Cal.App.3d 769 (1971). The attorney was held negligent when he failed to diligently act in collecting the debt for the non-client. *Hill v. Wilmott*, 561 S.W.2d 331 (Ky.App. 1978) (explaining *Donald v. Garry*, 19 Cal.App.3d 769 (1971)).

8

The Sixth Circuit referenced the *Hill v. Willmott* rule in a 1996 case although the facts of the case did not necessitate application of the exception as the Court concluded that the parties did have a client-attorney relationship. *Sparks v. Craft*, 75 F.3d 257 (6th Cir. 1996) (citing *Hill v. Willmott* 561 S.W.2d 331 (Ky.App.1978)).

In *American Continental Ins. Co. v. Weber & Rose, P.S.C.*, 997 S.W.2d 12 (Ky.App.1998) the Plaintiff, American Continental Insurance Company ("ACIC"), was an excess insurer who filed suit against the law firm, Weber & Rose ("W&R"). W&R had been hired to represent the primary insurer, NKC Hospital. The Court found that "ACIC had no contractual relationship with Weber & Rose" and that, at most, could be considered an *incidental beneficiary* of the relationship between W&R and NKC. *Id.* at 14. ACIC failed to show that the hiring of W&R was intended to benefit their interest and, as such, W&R possessed no duty to ACIC. *Id.*

In *Baker v. Coombs*, 219 S.W. 3d 204 (Ky.App.2007) the Court provides useful commentary on when the third party beneficiary theory applies. This case arose from a divorce proceeding where Baker, the former wife, sued her deceased, former husband's estate and attorney (Coombs). Amongst other claims, Baker alleged Coombs was negligent in his representation of her former husband (Collins) and that she was "entitled to relief as a third-party beneficiary of Coombs's legal contract to represent Collins." *Id.* at 208. The Court noted that "[d]ue to the highly personal nature of the attorney-client relationship, a legal malpractice claim 'may accrue only to the attorney's client.'" *Id.* at 208 (citing *American Continental Ins. Co. v. Weber & Rose, P.S.C.*, 997 S.W.2d 12 (Ky.App.1998) (quoting *American Employers' Insurance Co. v. Medical Protective Co.,* 165 Mich.App. 657, 419 N.W.2d 447, 448-449)). After

9

concluding that a "conventional 'legal malpractice' claim" was unavailable to Baker, the Court considered whether she was a third party beneficiary of the attorney's services. *Id.* at 209.

The Court examined the history of this third party beneficiary doctrine in Kentucky and found *Rose v. Davis* to be the starting point of the analysis. As stated in *Rose*, "an attorney still may be liable for damages to a third party because of events arising out of his representation of a client if the attorney's acts are fraudulent or tortious and result in injury to that third person." *Id.* (*citing Rose v. Davis*, 288 Ky. 674 (Ky.App.1941)). "Such liability may be found to exist where the attorney is responsible 'for damage caused by his negligence to a person intended to be benefited by his performance irrespective of any lack of privity'." *Baker v. Coombs*, 219 S.W. 3d 204 (Ky.App.2007) (citing *Hill v. Willmott*, 561 S.W.2d 331 (Ky.App.1978)).

The Court determined that the question of "whether Baker was a third-party beneficiary requires examining whether Coombs owed her a duty arising out of his representation of Collins" and that this is a question of law. *Id at 209.* In its analysis, the Court noted that "such proceedings are adversarial in nature" and concluded that "[a]bsent willful and wanton conduct, fraud, or malice, Coombs owed no corresponding duty of care to Baker as a third-party beneficiary because he had a contractual obligation to represent Collins **against** Baker as the adverse party to the proceedings." *Id.* The Court went on to reason that even if Baker was considered a third-party beneficiary, she still would not be entitled to relief since the attorney, Coombs, was employed to represent Collins in an adversarial proceeding against her. *Id. at 209.*

After reviewing the case law, it is clear that scenarios exist where an attorney might owe a duty to an intended third party beneficiary. The Court finds, however, that in this matter Ms. Patrick was not an intended third party beneficiary but, rather, an adverse party. It is this Court's

10

finding that an adverse party, by its very nature, cannot be an intended beneficiary of the attorney's services.

Croley argues, and the evidence shows, that the interests of the two parties were at odds in this transaction.  [R. 53-2 at 1].  Ms. Patrick, as the buyer of the property had an interest in purchasing the property at a good value and Croley, representing the seller, had an interest in assisting his Client in selling the property for as much as possible.  Plaintiff's own expert, David Smith who is a practicing attorney in Kentucky [R. 50 at 2, transcript page 5] provided testimony in his deposition that supports this proposition:

Question:     So in terms of the duty that you owe in that transaction it's your opinion that you owe the duty to all parties in the transaction?

Answer:     To some degree. Most, a lot of my colleagues don't feel that way and they've fought tooth and toenail to not have that liability but you know it's going to go somewhere else.  If I make a mistake for the lender it's going to cost the lender and the lender is going to come after me. So you know I'm still on the hook for any kind of error.

Question:     And is that typical in all transactional situations?

Answer:      No. I represent the buyer, I represent the buyer.

Question:     Okay. And if you represent the seller, you represent the seller?

Answer:     That's it and I don't care what they do.

Question:     And you don't owe a duty to the opposite party?

Answer:     I don't owe duty to the opposite party, no.

HON. TRIMBLE: Okay.

Answer:     I do owe. I probably owe a duty to the lender.

HON. GRAHAM: Right.

Answer:     But if there is no lender involved I don't owe any duty to the buyer.

11

[R. 50 at 9, transcript page 31-32].

There are also a number of troubling public policy implications if courts were to extend legal negligence protections to adverse parties.  The very nature of an adversarial legal system requires that opposing parties ardently and vigorously represent the interests of their clients.  The Court agrees with *Hill*, "[t]o allow a party to bring a negligence action against the adverse attorney would have a chilling effect on the number of meritorious claims filed and this cannot be tolerated under our system."  *Hill v. Willmott*, 561 S.W.2d 331 at 335 (Ky.App.1978).

Additionally, to adopt the approach suggested by Patrick would create an impossible administrative issue for the Courts.  Patrick suggests in the Response [R. 56] that "plaintiff's decedent (and the whole world) relied upon the defendant's competence to prepare a valid and proper affidavit of descent and deed." [R. 56 at 9]  It is very likely true that Ms. Patrick might have relied on the Defendant but this reliance is of no relevance as to whether or not a duty was owed.  What is determinative is whether Croley owed the Ms. Patrick a duty of care.

To follow Patrick's suggestion to its logical conclusion requires finding that the "whole world" has a cause of action against Croley in this case.  Patrick continues, "[c]ertainly, the plaintiff's decedent and all subsequent owners of said property were intended beneficiaries of an affidavit of descent lodged within the public records."  [R. 56 at 9].  This line of reasoning would create an unworkable system, not anticipated or intended by the Kentucky Court of Appeals as a result of the development of the *intended beneficiary* doctrine.

III

For all the aforementioned reasons, the Defendant's Motion for Summary Judgment regarding liability [R. 53] shall be **GRANTED**.

12

Accordingly, it is hereby **ORDERED** as follows:

1.      The Defendant's Motion for Summary Judgment regarding liability [R. 53] shall be **GRANTED**;

2.      The Defendant's Motion for Summary Judgment on grounds of damages [R. 54] is **MOOT**;

3.      The Defendant's Motion for Summary Judgment on grounds of a violation of the statute of limitations and/or the laches doctrine [R. 55] is **MOOT**;

4.      The Jury Trial that was scheduled for Monday, September 23, 2013 is **CANCELLED**, and;

5.      This matter is **STRICKEN** from the active docket.


This 20th Day of September, 2013.


 Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**

13